NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT BRANCH, | : |
| Plaintiff, | : Civil Action No. 06-1839 (PGS) |
| v. | : |
| | :  **OPINION** |
| ERIC STOKES, et al., | : |
| Defendants. | : |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendants Reed and Kurra's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

Most of the facts are set forth in my prior opinion (Docket Entry 124), and they are incorporated herein. In addition, new facts about doctors Kurra and Reed are included below.

There was a hearing before the Northern State Prison ("NSP") Treatment Review Committee ("TRC") to consider the recommendation of Dr. Kesselman that Branch be involuntarily administered psychotropic medication. The TRC was comprised of defendant Eric Stokes (Chair and representative of the New Jersey Department of Corrections), Dr. Kurra, a psychiatrist, and Dr. Reed, a psychologist. (Josephson Decl. at DOC 14.) Branch attended the January 31, 2006 TRC hearing. At the hearing, Branch stated that he is allergic to "psych" medications, that they make him feel like he has "Down's syndrome," and that he has had "out of body experiences" as a result of taking psychotropic medication. (Josephson Decl. at DOC6,

1

DOC11.)

After considering the medical history,[1] the TRC determined that Branch presented a substantial risk of imminent harm to himself, that he will be unable to care for himself, and that he would be incapable of participating in his treatment plan without medication.

Branch had not been prescribed psychotropic medication for at least fifteen years prior to February of 2006. During that interim time, some information was provided. Between September 25, 2000 and December 14, 2005, Branch was evaluated by several mental health professionals working on behalf of the Department of Corrections, all of whom indicated that Branch was not a candidate for forced medication. In fact, as late as December 14, 2005, Branch's treating psychologist noted, among other things, that Branch's mood and affect demonstrated "no depression, anxiety, or agitation." This information is clearly reflected in the medical records which members of the TRC purportedly reviewed when deciding whether to forcibly medicate Branch.

On December 28, 2005, Peter C. Martindale, M.D., the Regional Director of Psychiatry for the Department of Corrections, examined Branch immediately following the fight that precipitated Branch's forced medication. Dr. Martindale noted, among other things, that Branch "had no active symptoms" of schizophrenia and "no acute psychiatric issues that are detectable." (*See* Welch Decl. Ex. G.)

On January 10, 2006, just two weeks after Dr. Martindale's examination, Dr. Kesselman

---

[1] This includes Branch's Face Sheet, Progress Notes, Involuntary Medication Report by Dr. Kesselman, Treatment Plan, Electronic Medical Records, Psychiatric Evaluation, Medication Administration Records and Branch's statement. Branch disputes whether this exhaustive review of medical files occurred in full.

examined Branch for only the third time in five months, and recommended a forced medication protocol be initiated. Prior to a forced medication protocol being commenced, a TRC is empaneled to determine whether the inmate actually requires the forced medication. In reaching a conclusion as to whether to forcibly medicate an inmate, a TRC must consider the treating psychiatrist's recommendation to non-emergently involuntarily medicate an inmate and determine whether to grant authorization to the treating psychiatrist to order the non-emergent involuntary medication. (See Section II of the Department of Corrections Internal Management Procedure Title: "Non-Emergency Involuntary Medication Administration.")

As noted above, Branch attended the initial TRC hearing, on which doctors Reed and Kurra both served, on January 31, 2006. Branch voiced his objection to Dr. Kesselman's recommendation that forced medication be required. Branch argued he was allergic to the drugs prescribed, and the drug regimen gave him "out of body experiences."

Plaintiff argues that Reed served on the initial TRC despite the fact that he treated Branch on December 27, 2005, which is in breach of the Department's regulations. (See Welch Decl. Exhibit G). It appears that Reed examined Branch at the time of the fight, but he did not revise or amend Branch's treatment. Hence, Reed argues he had not previously "treated" Branch.

Branch's appeal was denied and Branch was immediately administered psychotropic medication against his will. A second TRC was convened on March 7, 2006, to extend the forced medication for an additional six months.

Although discovery from doctors Kurra and Reed was undertaken after my last decision, the facts have not significantly changed. Previously, I noted the TRC was confronted with the recommendation to "force" or involuntarily administer drugs due to the facts surrounding

3

Branch's condition. As noted, Branch was involved in a bloody altercation where he lost some teeth, he had been arrested 77 times during his life, he was hallucinating and was diagnosed with paranoid schizophrenia. Plaintiff argues that Kurra and Reed failed to examine the opinions of other psychologists for the fifteen years before Kesselman's recommendation. Although the prior medical history is important, the recommendation and findings of Kesselman at the time are closer in time, and show his present medical condition in light of a recent fight and bouts with hallucinations. Overall, the decision of Kurra and Reed does not show any deliberate indifference on their part.[2]

Both Reed and Carrero testified that the TRC is designed to encourage inmates to take their medication voluntarily rather than to determine whether the decision to medicate is appropriate. (*See* Welch Cert. Exs. L and P; Welch Decl. Ex. I.) Similarly, Kurra testified that an inmate's objection to a forced medication protocol before a TRC may be irrelevant because the TRC was formed due to the inmate's objections. (*See* Welch Decl. Ex. J). Plaintiff argues this shows deliberate indifference. Branch misconstrues the testimony to assume that the TRC simply "rubber stamps" the treating physician's decision. Carrero testified that the role of the TRC is not to review a treating physician's decision to prescribe a certain medication to the inmate. Rather, the role of the TRC is to evaluate whether it is necessary to place the inmate on a forced medication protocol. The TRC's goal is to encourage the inmate to take the medication

---

[2] In its previous Opinion, the Court reviewed the applicable case law under the Eighth Amendment in finding that Defendant Stokes had not acted with "deliberate indifference." The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (citing *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)); *accord Farmer v. Brennan,* 511 U.S. 825 (1994). This analysis remains the same here. There is no new evidence presented that doctors Reed and Kura demonstrated "deliberate indifference" to Plaintiff's medical needs.

voluntarily. As such the TRC has a valuable purpose.

In conclusion, like the other defendants in the prior motion, the actions of Kurra and Reed do not show any deliberate indifference on their part.

June 3, 2010

                                        PETER G. SHERIDAN, U.S.D.J.